**FILED**

MAY 2 2 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT

## DISTRICT OF COLUMBIA

**CARL BENIT COOPER**                          )
107 Little Joes Lane                           )
Ponderosa MHP                                  )
Barco, North Carolina 27917-9526               )
(252) 453-4983                                 )
                          Plaintiff,           )
                                               )
                                               )
            -vs-                               )
                                               )
                                               )

**Alberto Gonzalez,**                          CASE NUMBER  1:06CV00961
Attorney General of the United States
Main Justice Building                          JUDGE: Paul L. Friedman
10th & Constitutional Avenue
Washington, D.C. 20530                         DECK TYPE: Civil Rights (non-employment)

                                               DATE STAMP: 05/22/2006

**Brucie Howe Hendricks, AUSA**               )
United States Attorney's Office               )
170 Meeting Street, P.O. Box 978              )
Charleston, South Carolina 29402              )
                                               )              **CIVIL ACTION NO:**
                                               )
**V.O. Little, Special Agent of the FBI**     )
Office of VCTF/FBI                             )
170 Meeting Street, P.O. Box 921              )
Charleston, South Carolina 29402              )
                                               )
                                               )
**David Alan Espie, III, of the FBI**         )
Office of VCTF/FBI                             )
170 Meeting Street, P.O. Box 921              )
Charleston, South Carolina 29402              )
                                               )
                                               )
**J. Scott Youngblood, USPO**                 )
Unites States Probation Officer               )
83 Broad Street, P.O. Box 894                 )
Charleston, South Carolina 29402              )
                          Defendants.         )

1

## COMPLAINT 'BIVENS CLAIM' PURSUANT TO 42 USC SECTION 1983

Plaintiff, **Carl Benit Cooper (Mr. Cooper),** through **pro-se,** files this Bivens Claim for good and equitable cause believes in good faith that the Defendants in the above-captioned case conspired with one another and others to interfere with his constitutionally protected rights, all in an effort to accomplish a common and unlawful plan against him.

**Specifically:**

### I. DEFENDANT ALBERTO GONZALEZ (MR. GONZALEZ), ATTORNEY GENERAL OF THE UNITED STATES

Justice Gonzalez who heads the Department of Justice for investigating and prosecuting cases under federal criminal law is responsible for federal law enforcement and related programs and services.

### II. DEFENDANT BRUCIE HOWE HENDRICKS (MRS. HENDRICKS), ASSISTANT UNITED STATES ATTORNEY, THE LEAD PROSECUTOR IN MR. COOPER'S CASE VOILATED HIS CONSTITUTIONAL RIGHTS UNDER THE 4TH, 5TH, 13TH, AND 14TH AMENDMENT; 18 USC SECTIONS 241 AND 242; 18 USC SECTIONS 1001, 1621(2) AND 1623(a); BIVENS COMPLAINT UNDER 42 USC 1983 AND THE ETHICAL STANDARDS SET FOR PROFESSIONAL CONDUCT

Mrs. Hendricks violated Mr. Cooper's constitutional rights when she conspired with another (Special Agent V.O. Little, of the FBI) by *maliciously* appearing before a quorum on January 11, 1995 which was confirmed by the foreman of the Grand Jury. At that time Mrs. Hendricks did knowingly, willfully, fraudulently and deliberately presented false material statements before the quorum and made false allegations in the *overt act* of Mr. Cooper's alleged criminal offenses **(G.J. pp. 1-7).** Mrs. Hendricks acted in furtherance of the conspiracy when she and Special Agent V.O. Little went back to the Grand Jury

2

[again] on March 14, 1995, wherein she did knowingly, willfully, fraudulently and

deliberately make false material statements while under *oath* before the Grand Jury while

fraudulently concealing **Brady** Material (Mr. Cooper's confirmed Chapter 13 Bankruptcy

Known as Case No: 94-72416), and thus, Mrs. Hendricks did knowingly willfully and

deliberately committed malicious prosecution and prosecutorial misconduct.

### III. DEFENDANT V.O. LITTLE (AGENT LITTLE), SPECIAL AGENT OF THE FEDERAL BUREAU OF INVESTIGATION, THE CHIEF INVESTIGATOR IN MR. COOPER'S CASE VOILATED HIS CONSTITUTIONAL RIGHTS UNDER THE 4TH, 5TH, 13TH AND 14TH AMENDMENT; 18 USC SECTIONS 241 AND 242; 18 USC SECTIONS 1001, 1621(2) AND 1623(a) AND BIVENS COMPLAINT UNDER 42 USC 1983

Agent Little violated Mr. Cooper's constitutional rights when he conspired with others by

*maliciously* appearing before Robert S. Carr, U.S. Magistrate Judge on November 21,

1994, for the *issuance of an arrest warrant* on him with a false report. Agent Little did

knowingly, willfully, fraudulently and deliberately presented a false report to the

magistrate judge on Mr. Cooper which was with *malice and without probable cause.*

Agent Little report contained only the false and inconsistent information received

pertaining to Mr. Cooper from one, Mr. Wilfred Rivers **(Mr. Rivers),** (Mr. Cooper

(alleged) co-defendant) who had provided Agent Little along with others officials during

several debriefings and subsequently led to Mr. Rivers' arrest **(PSR, ¶ 22).** Agent Little

acted in furtherance of the conspiracy when **[he]:**

   1. Did knowingly, willfully and fraudulently made a false arrest on Mr. Cooper

wherein he knew was with malice and without probable cause.

   2. Failed to conduct a *fair* investigation in Mr. Cooper's alleged criminal case.

   3. Gathered and submitted a false report to both the Attorney General's Office in

Washington, DC and to the U.S. Attorney's Office for the District of South Carolina

4. Made false declarations on January 11, 1995, and [again] on March 14, 1995, while

under *oath* before a federal grand jury

5. Did knowingly, willfully and fraudulently concealed **Brady** Material (Mr. Cooper's

confirmed Chapter 13 Bankruptcy Known as Case No: 94-72416) in the Superseding

Indictment on March 14, 1995. And thus, Agent Little did knowingly, willfully,

fraudulently and deliberately committed wanton misconduct

## IV. DEFENDANT DAVID ALAN ESPIE III (AGENT ESPIE), SPECIAL AGENT OF THE FEDERAL BUREAU OF INVESTIGATION, THE POLYGRAPHER FOR MR. COOPER'S POLYGRAPH EXAMINATION, VIOLATED HIS CIVIL RIGHTS UNDER 18 USC SECTIONS 241 AND 242; 18 USC SECTIONS 1001, 1621(2) AND 1623(a), AND BIVENS COMPLAINT UNDER 42 USC 1983

Agent Espie conspiracy cause him to violated Mr. Cooper's civil rights when he did

knowingly, willfully, fraudulently and deliberately *perjury* himself while under *oath*

before the trial jury. Agent Espie's testimony at trial about Mr. Cooper's interview on

November 9, 1994, was false and misleading to the jury. Unfortunately for Mr. Cooper,

Agent Espie testimony made a compelling impact towards the jury's guilty verdict. And

thus, Agent Espie did knowingly, willfully, fraudulently and deliberately committed

perjury while under oath before a trial jury.

## V. DEFENDANT J. SCOTT YOUNGBLOOD (MR. YOUNGBLOOD), THE UNTIED STATES PROBATION OFFICER, PREPARED MR. COOPER"S PRESENTENCE REPORT (PSR) VOILATED MR. COOPER'S CIVIL RIGHTS UNDER 18 USC SECTIONS 241 AND 242; BIVENS CLAIM UNDER 42 USC 1983 AND BY COMMITTING OFFICIAL MISCONDUCT AS A PUBLIC OFFICIAL

4

Mr. Youngblood (a neutral party in Mr. Cooper's case), violated Mr. Cooper's constitutional rights when he conspired with others to interfere with Mr. Cooper's civil rights, Mr. Youngblood did knowingly, willfully, fraudulently and deliberately prepared Mr. Cooper's PSR with false information **For instance:** Mr. Youngblood intentionally *used* the false and inconsistent statements which Mr. Rivers had given Agent Little and other law officers during several debriefings to prepare Mr. Cooper's PSR. Although, Mr. Youngblood, made mentioned of Mr. Rivers' false and inconsistent statements **(PSR, ¶¶ 18 & 22),** nevertheless, he still used that false information to prepare Mr. Cooper's PSR. Mr. Youngblood acted in furtherance of the conspiracy wherein he attached Mr. Cooper's *disputed, unresolved and undated* Addendum to his PSR and Ordered Mr. Cooper's PSR *sealed* **(Exhibit #1).** On January 25, 2001, through due diligence, Mr. Cooper's PSR was finally *"unsealed"* and *"disclosed"* to him *see,* Civil Action No: 95-206 (D.S.C. by Falcon B. Hawkins, U.S. District Judge dated, January 25, 2001).

**NOW,** *[by a jury trial]* Mr. Cooper is seeking money damages for $100,000,000.00 from the United States Department of Justice recoverable for wrong done him by the defendants, and for the pain he has suffered, and is continuing to suffer, as a result of his *"prison sanction" "loss of freedom and property" "loss of disability income as a 50% Disabled American Veteran and other entitlements" "loss of a second retirement career with the U.S. Postal Service" "a damaged reputation and the embarrassment of being stigmatized as a convicted felon",* and that he be awarded costs.

This is Mr. Cooper's second **pro-se** Bivens Complaint under 42 USC § 1983 in the above-captioned case. On November 6, 2002, the district court *dismissed* Mr. Cooper's claim for failure to state a claim upon which relief can be granted *citing,* Heck v.

5

Humphrey, 512 U.S. 477 (1994) *See,* Civil Action No: 02-2191(D.C.D.C. by Judge

Reggie B. Walton). Mr. Cooper appealed. On August 28, 2003, the United States Court

of Appeals for the District Of Columbia Circuit, *affirmed* the district court decision *see,*

Civil Action No: 02-5412 (D.C. Cir.). On September 20, 2005, Mr. Cooper became a

citizen of the State of North Carolina when he was released from Federal Bureau of

Prisons **(Exhibit #2)** Thus, Mr. Cooper should not be barred from filing this Bivens

Action under 42 USC §1983 he is within the two years statute of limitations.

*NOW, [by a jury trial]* Mr. Cooper will attempt to show an agreement or a meeting of

the minds among the defendants to violate his constitutional rights by demonstrating

*passim* this Brief. The defendants successfully accomplished their conspiracies by

conspiring directly and indirectly with one another and others *particularly* with Pinkerton

Security, (Mr. Cooper's former employer); Mr. Andrew John Savage III, (Mr. Cooper's

retain trial attorney); Mr. Eduardo Kelvin Curry, (Mr. Cooper's assigned attorney for

filing objections to his PSR, and for sentencing hearing), and Mr. Seekings, (Mr.

Cooper's assigned attorney by the Fourth Circuit, to handle his direct appeal). The record

taking as a whole is overwhelming with evidence that the defendants were in concert to

maliciously single Mr. Cooper out to be charged with the thefts of over $207,000.00 of

unreported losses at NationsBank's ATM's in South Carolina. Mr. Cooper maintains his

Bivens Complaint *"is not"* in any way directed against private persons'. Clearly, this

Bivens Complaint is against government officials for conspiring to interfere with Mr.

Cooper constitutional rights. *Moreover,* Mr. Cooper claims that his trial was racially

motivated, and race was indeed a factor. The equal protection component of the 5th

Amendment's Due Process Clause forbids the government from deciding to prosecute

6

based on a defendant's race. Mr. Cooper claims that the prosecution "had a discriminatory effect and that it was motivated by a discriminatory purpose." *For instance:* (1) that "similarly situated individual of a different race was not prosecuted," and (2) that the decision to prosecute was "invidious or in bad faith," Mr. Cooper assertions is that Mr. Williams, his Pinkerton partner, who was the other individual... in the same circumstances...however, was treated different. ***Case in point:*** Mr. Williams, ***a white male,*** a native of Charleston, South Carolina stood nearby with his hands in his pockets on the evening of October 11, 1994 approximately 9:38 pm when Mr. Cooper was unexpectedly robbed at gun-point by two masked gunmen **(PSR, ¶ 19).**Mr. Williams was given a polygraph shortly after the armed ATM bank robbery offense by the Mount Pleasant Police Department, he failed. Still, Mr. Williams was identified as *"the victim"* **(Tr. 86).** Unlike Mr. Cooper, ***a black male,*** *"the real victim,"* he was taken *hostage* and was shouted at several times to "hurry up motherfucker" **(Exhibit #5),** he was bound by duct tape at the mouth, hands, and feet **(Tr.469),** handcuffed**(Tr.468)**; after police and EMS arrived EMS extricated the handcuffs from him**(Tr.471).** Then, approximately 30 days later, he was giving a polygraph test not by the Mount Pleasant Police Department rather, it was by the FBI.

## JURISDICTION

The jurisdiction of this Court is invoked, pursuant to Rule 8 (a), Federal Rules of Civil Procedure.

7

## STATEMENT OF CLAIM:

After a successful and distinguish career with the United States Army where Mr. Cooper attained the rank of Command Sergeant Major E-9, the highest rank possible for an enlisted soldier. On April 3, 1993, Mr. Cooper retired from the U.S. Army after more than 24 years of *distinguished* military service as a Command sergeant Major E-9,**(PSR, ¶¶ 75-76)** and with 50% physical disability as a result of two back surgeries **(PSR, ¶ 71)** Upon retirement, Mr. Cooper a native of Camden, North Carolina, moved to Summerville South Carolina with his wife Dorothy and began construction on his custom built dream home. Mr. Cooper's dream home was approved through a VA guaranteed home loan for $146,000.00 located at 906 N. Palmetto Street, Summerville, South Carolina 29483. On January 4, 1994, Mr. Cooper closed his loan and moved into his dream home.

In late February 1994, Mr. Cooper was hired by Pinkerton Security where he specialized in Automated Teller Machine (ATM) repair and maintenance. When Mr. Cooper was hired, Pinkerton had a contact with NationsBank to provide timely maintenance and repair service when NationsBank's ATMs malfunctioned. Mr. Cooper's principal responsibility was to head a team of two Pinkerton guards that responded to NationsBank's request for service **(PSR, ¶ 12)**

On May 19, 1994, Mr. Cooper filed for Chapter 13 bankruptcy protection under Title 11, United States Code in the U.S. Bankruptcy Court for the District of South Carolina, at Columbia known as Case No: 94-72416**(PSR, ¶¶ 5-7).** On July 28, 1994, Mr. Cooper's Chapter 13 Bankruptcy Plan for Case No: 94-72416 was confirmed by the United States Bankruptcy Court for the District of South Carolina at Columbia **(Tr. 801-02)**

8

On October 11, 1994, Mr. Cooper was *unexpectedly* involved in an armed ATM bank robbery, while on a routine service call at a NationsBank's ATM located at 1020 Anna Knapp Boulevard Mount Pleasant, South Carolina at approximately 9:38 pm that evening. Surprisingly, Mr. Nathan Williams (Mr. Williams), (Mr. Cooper's Pinkerton partner), a *white male*, a native of Charleston, South Carolina the (alleged) *victim* in Mr. Cooper's case stood guard nearby with his hands in his pockets when Mr. Cooper was robbed at gun point by two masked gun men **(PSR, ¶ 19)**.

On October 12, 1994, at approximately 8:30 am that morning, Mr. Cooper first met Agent Little at the Pinkerton Security Office located at 2055 Spaulding Drive, North Charleston, South Carolina 29406-4960. Mr. Cooper was introduced to Agent Little by Mr. Jerry Williams, his Pinkerton ATM Responder supervisor. Agent Little was introduced as the chief investigator in the October 11, 1994, armed ATM bank robbery offense. On or about October 19, 1994, Agent Little contacted Mr. Cooper at his home at 906 N. Palmetto Street, Summerville, South Carolina 29483 and request to schedule both an interview and a polygraph test. Agent Little further explained to Mr. Cooper that the interview and the polygraph test was necessary because Mr. Williams was given a polygraph by the Mount Pleasant Police Department shortly after the robbery on October 11, 1994, Mr. Cooper gladly agree to the Agent Little request.

On November 9, 1994, approximately 9:30 am that morning, Mr. Cooper reported to Agent Little office located at 170 Meeting Street, Charleston, South Carolina for his scheduled interview and polygraph test. Needless to say, Mr. Cooper's interview with Agent Little was all about thefts from NationsBank's ATM machines, and his previous bankruptcies. Agent Espie who was present during the interview was introduced as the

9

polygraph examiner who conducted *only* a polygraph examine on Mr. Cooper. On November 12, 1994, Mr. Cooper was informed by Mr. Jerry Williams, his supervisor, that according to Agent Little, Mr. Cooper had passed his polygraph examination, and therefore, he could continue his job with Pinkerton.

On November 15, 1994, approximately 7:30 pm that evening while Mr. Cooper was undergoing and attending training at the United States Postal Service as a trainee located at 7075 Cross County Road, Charleston, South Carolina 29418. Agent Little used Mr. Rivers, *a multi convicted felon,* with an extensive criminal record to serve as an Undercover Agent in the undercover taping of a conversation with Mr. Cooper in order to *entrap* him in the October 11, 1994, armed ATM bank robbery offense and the theft of missing or stolen money from NationsBank's ATM machines in South Carolina **(Tr. 357, 1203)**

On November 21, 1994, Agent Little violated Mr. Cooper's constitutional rights when he did knowingly, willfully and fraudulently used information from the false and inconsistent statements provided to him by Mr. Rivers during countless debriefings between November 10th thru 15th, 1994, to prepare a false report against Mr. Cooper which was with malice and without probable cause. **Then,** Agent Little took that false report before Robert S. Carr, U.S. Magistrate Judge, for the *issuance of an arrest warrant* on Mr. Cooper. On November 23, 1994, Mr. Cooper was arrested. On November 30, 1994, Mr. Cooper was released on a $25,000.00 surety bond **(PSR, ¶ 9).**

Apparently, during the time Mr. Cooper worked for Pinkerton Security, NationsBank experienced over $207,000.00 in losses at ATM's in South Carolina for which Nations-Bank held Pinkerton responsible. None of these losses were reported to the FBI until after

10

October 11, 1994, when a South Carolina NationsBank's ATM was robbed while Mr.
Cooper was at work on a routine service call. The record taken as a whole clearly reflects
that the defendants conspired with one another and others to interfere with Mr. Cooper's
constitutional rights made him the *scapegoat* and held him responsible for there losses
**(Exhibit #3)** Surprisingly, as a result of the $207,000.00 in missing and unreported
losses at NationsBank's ATM's in South Carolina, as an example of those losses.
According to Mr. Rivers' *(false and inconsistent statements provided to Agent Little*
*during the countless debriefings),* who was eventually identified as being one of the
suspect in the October 11, 1994, ATM robbery **(PSR, ¶ 22)** Mr. Cooper stole $9,000.00
from a NationsBank's ATM on July 2, 1994 **(PSR, ¶ 12);** Mr. Cooper stole another
$30,000.00 from NationsBank ATM on September 24, 1994 **(PSR, ¶ 13),** and finally,
what Mr. Rivers termed a staged robbery on October 11, 1994 when the NationsBank
ATM at Anna Knapp Boulevard, Mount Pleasant, South Carolina was robbed of
approximately $47,100.00 **(PSR, ¶¶ 18-19).** It was Mr. Rivers' *(false and inconsistent*
*statements deliberately used by Agent Little to mislead the grand jury)* about the losses of
those monies at NationsBank's ATM's   that led to the indictment of Mr. Cooper on bank
robbery charges Counts 1-4 **(PSR, ¶¶ 1-4).**

   On January 11, 1995, *surprisingly,* Mr. Cooper was indicted on a four count
Indictment alleging:

   **Count One,** conspiracy to commit armed bank robbery (18 USC § 371) on October 27,
1994

   **Count Two,** bank robbery (18 USC §§ 2113(b), and 2) on September 24, 1994

**Count Three,** armed bank robbery (18 USC §§ 2113 (a) (d), and 2) on October 11, 1994

**Count Four,** use of a firearm during a crime of violence (18 USC §§ 924(c) and 2) on October 11, 1994 **(PSR, ¶¶ 1-4)**

## DEFENDANTS MRS. HENDRICKS AND AGENT LITTLE

On April 7, 1997, through due diligence, Mr. Cooper's Grand Jury presentations dated, January 11, 1995, and March 14, 1995, were finally *"disseminated"* to him by district court order signed by Falcon B. Hawkins, U.S. District Judge. According to Mr. Cooper's Grand Jury presentation dated, January 11, 1995, the evidence is well-established and clearly supports Mr. Cooper's complaint that, Mrs. Hendricks *(attorney for the government),* having a quorum, which was confirmed by the foreman of the grand jury **(GJ, p.1)** did knowingly, willfully and fraudulently presented false material statements before a quorum in Mr. Cooper's (alleged) criminal offense. And that, Agent Little *(witness),* being duly sworn by the foreman of the Grand Jury, to testify truthfully **GJ, p.12)** testified as follows:

**1. That,** Mr. Rivers had provided information that Mr. Cooper had stolen $7,000 from an ATM machine…(during the July 4th weekend). And that, Agent Little was able to confirmed that with NationsBank **(GJ, pp.19-20)**

**Whereas,** during trial, it proven by NationsBank that there were multiple losses at this one particular ATM machine between July 1st and July 7th. On July 6th, $7,200 was short. The next day, being July 7th, it was counted again, and they came up with a different amount of $9,125 **(Tr. 611-13)**. Moreover, Agent Little had proof that the alarm at this particular ATM machine was deactivated on July 2nd at 9:26 a.m. in the

morning, and it did so remain off for over eight hours **(Tr. 573)**.

**2. That,** He had evidence based on interviews that he conducted along with officers of

Mr. Rivers that between July and August of 1994 on several occasions Mr. Cooper

showed Mr. Rivers a fire-restraint box located under Mr. Cooper's residence. And

that Mr. Rivers had also provided them with information that he had in fact seen a

fire-restraint box containing twenty and five dollar bills with the straps, the bank

straps still on them, comprised of new twenty and five dollar bills. Mr. Rivers advised

that Mr. Cooper had somewhere in the neighborhood of $30,000. **(GJ, pp. 20-21)**

**Whereas,** during trial, Mr. Rivers testified that he did not stop by Mr. Cooper's

residence July and August of 1994, and that it was in September of 1994 **Tr. 182)**

Moreover, Mr. Rivers testified to seeing bunch of cash in 20-dollar denominations.

All of them was in 20's, 20-dollar bills **(Tr. 183)** *which was never proven.*

**3. That,** Yes. Mr. Rivers provided us with information that he had in fact, along with

Carl Cooper, burglarized the ATM machine... And also, alarm records indicate that

the alarm was turned off at approximately 12:00 am on that morning, the 24th of

September 1994 **(GJ, p.24).**

**Whereas,** the evidence demonstrated the alarm records actually indicated the alarm

Was accessed at 007, which was seven minutes after midnight.... And, it was set at

3:16 in the morning. That's 3 am, and it was set from that location **(Tr. 576).**

**4. That,** Yes. Mr. Rivers indicated in his statement also that he maintained the money

from this burglary . *Specifically,* on September 24, 1994, Mr. Rivers concealed at his

residence a bag containing the $40,000 stolen by Mr. Cooper and Mr. Rivers form the

ATM NationsBank.... **(GJ, p.25)**

13

**Whereas,** during trial, Mr. Rivers testified that, he never counted out the money that was taken that night. Mr. Cooper told him it was $30,000 **Tr. 271).** Mr. Rivers also testified that, he took $18,000 home with him **(Tr. 281).**

**5. That,** Yes. The week after...the burglary that occurred in September,...Mr. Cooper purchased a satellite system..., at which time Mr. Cooper paid for the satellite with twenty crisp twenty-dollar bills, approximately $2,000. And that, the vendor remember talking with Mr. Cooper about the bills being so crisp and new, and Mr. Cooper advised them that he had obtained the money from his brother in Georgia **(GJ, pp. 25-26).**

**Whereas,** during trial, Mr. William Roland Veno, the owner of the satellite company testified: yeah, lots of 20's. It was basically—if you had gone to the bank and got cash out, it was fairly new money **(Tr. 861).** But more importantly, Mr. Cooper withdrew cash from his bank account for $1,500 on October 4, 1994 **(Tr. 866-67)** to pay for his satellite purchased on October 4, 1994 **(Tr. 860, 1163).** Mr. Veno testified to nothing about sticky or crispy 20-dollar bills **(Tr. 1170-71).** Moreover, Mr. Cooper has never had any of his brothers to live in Georgia **(PSR, ¶ 68)**

**6. That,** Yes. Mr. Rivers also provided a statement that he and Mr. Cooper had planned and staged this robbery with Dwayne Bryant. Mr. Dwayne Bryant is the individual that is identified as being the second masked man that accompanied Mr. Rivers on the night of October the 11th to the robbery **(GJ, p.26)**

**Whereas,** the record taken as a whole is clear, and the evidence is well-established, according to Mr. Cooper's PSR, Mr. Cooper had never seen, heard of, nor met, Mr. Dwayne Bryant **(PSR, ¶ 18).**

**7. That,** When Agent Little was questioned by juror. He was still untruthful **specifically**

> **By Juror:**   All of this is based on what Rivers says?
>
> **By Witness:** No.
>
> **By Juror:**   That's what I've heard so far.
>
> **By Witness:** No, we've been able to go back …to NationsBank and they're
>
> saying, 'Hey, the machine was turned off…at approximately 12:00 to 12:07.'
>
> ….**(GJ, p.35)**

**Whereas,** evidence demonstrated the alarm records actually indicated the alarm was accessed at 007, which was seven minutes after midnight… And, it was set at 3:16 in the morning . That's 3am, and it was set from that location **(Tr. 576; PSR, ¶ 13).**

> **By Juror:**   If they found money at Mr. Cooper's house?
>
> **By Witness:** We never found money at Mr. Cooper's house, but during the
>
> summer of 1994, Mr. Cooper filed bankruptcy. But during that time period he
>
> added almost $20,000 worth of revisions to his house. We've interviewed
>
> construction people who indicated that they were paid cash money. Some of
>
> them indicated that it was crisp new twenty-dollar bills **(GJ, pp. 36-37).**

**Whereas,** Mr. Cooper's property nor his house was never searched by Agent Little or anyone else. In fact, Mr. Cooper was never served a search warrant!! During trial, the government proved that Mr. Cooper's revisions cost $13,500 *not* $20,000 in of that $13,500 a chain-link fence for approximately $4,500 was included which was paid for through the Bankruptcy Trustee of Columbia, South Carolina Case No: 94-72416. There were constructions who testified about how they were paid, some paid with checks and some paid with cash. However, no construction believed the cash paid

was extraordinary or outside the normal course of business. No construction testified that he or she knew or believed the money came from illegal sources (**Tr. 538, 543, 546, 1050-52**).

Nonetheless, Agent Little and Mrs. Hendricks, repeatedly implied to the Grand Jury that cash payment represented nefarious activities with regards to NationsBank, were used by Mr. Cooper to make revisions to his new home. Both Agent Little and Mrs. Hendricks knew or should have known that they made false material statements before the Grand Jury, and thus, knowingly committing perjury. Agent Little testimony was indeed false, a bald face assumption. Clearly, both Agent Little and Mr. Hendricks did knowingly, willfully, deliberately and fraudulently made false declarations before a Grand Jury while under oath, thus, committing perjury under 18 USC § 1001, and 1623(a) *NOW,* Mr. Cooper questioned whether or not the Grand Jury returned a True Bill of Indictment because there is no signature or date on the Original Indictment (**Exhibit #4**)

On March 14, 1995, Agent Little and Mrs. Hendricks acted in furtherance of the conspiracy when they went back to the Grand Jury to Supersede the Indictment and maliciously made false material statements *a second time* while under oath before a Grand jury, with malice, and without probable cause while fraudulently concealing **Brady** Material (Mr. Cooper's Chapter 13 Bankruptcy which was confirmed on July 28, 1994, by the U.S. Bankruptcy Court for the District of South Carolina, at Columbia, known as Case No: 94-72416). The Superseding Indictment was identical to the Original four-count Indictment, but adding three counts of criminal bankruptcy fraud alleging:

misrepresentation of financial information when he filed his Chapter 13 Bankruptcy

16

petition under Title 11 USC alleging that, Mr. Cooper did knowingly and fraudulently conceal assets from R. Geoffrey Levy, the Chapter 13 Bankruptcy Trustee appointed on May 19, 1994, property belonging to the Trustee Estate, all in Violation of (18 USC §§ 152, and 2) **(PSR, ¶¶ 5-7)**

**Whereas,** both Agent Little and Mrs. Hendricks possessed evidence showing that Mr.

Cooper listed real estate valued at $146,000 and personal property in the amount of

$15,840 **For instance:** during trial,

**Ms. Hendricks:** I'm going to hand you what's been marked as Government's Exhibit

Number 100 for identification, and I'd ask you if you recognize that.

**Mr. Levy:**      Yes, ma'am. This is Carl B. Cooper's Chapter 13 Plan. The plan was

confirmed by the Bankruptcy Court, the plan dated July 28, 1994.

**Ms. Hendricks:** Now, Mr. Levy, I'd ask you to look at your records that you've got with

you. And by looking at your records, could you tell us when this Case

was filed.

**Mr. Levy:**      Yes, ma'am, I can. It was filed on May 19, 1994.

**Ms. Hendricks:** And what is the exact title of the case in terms of the case number?

**Mr. Levy:**      The case number is 94-72416.

**Ms. Hendricks:** In looking over your records there in regards to the case of Mr. Cooper,

could you advise the jury as to Mr. cooper's financial situation, overall

financial situation, in May of 1994?
**Mr. Levy:**      ...In Mr. Cooper's case, he listed real estate valued at $146,000--that's

his home—personal property in the amount of $15,840....

**(Tr.801-02)**

The record is clear, Agent Little and Mrs. Hendricks not only did they present false

material statement before the Grand Jury while under oath. But their conspiracy forced

them to further violate Mr. Cooper's due process by deliberately presenting evidence of an event that pre-dated the alleged bank robbery offense Counts 1-4. It was their intention to Superseded the Indictment of a wholly separate and distinct offense against Mr. Cooper in order to chill his ability to present witnesses in possession of exculpatory factual evidence; denying him due process of law under the 5th Amendment

## DEFENDANT ESPIE

**Fact,** on November 9, 1994, at approximately 9:30 am that morning, Mr. Cooper reported directly to Agent Little at the VCTF/FBI Office located at 170 Meeting Street, Charleston, South Carolina. However, Agent Espie was present and Agent Little introduced Agent Espie to Mr. Cooper only as the polygraph examiner. Nonetheless, during trial, Agent Espie did knowingly, willfully fraudulently and deliberately perjury himself by making false material statements before the trial jury while under oath. Agent Espie *(witness)*, being first duly sworn, to testify truthfully **(Tr. 827)** testified as follows:

**Mr. Savage:** Your Honor, I just took a quick look at Mr. Espie's package, and it's all about polygraph exams.

**The Court:** Say again.

**Mr. Savage:** This is the polygraph examiner; is that correct?

**The witness:** We conducted an interview.

**Mr. Savage:** If it's an interview associated with a polygraph –

**The witness:** Polygraph is not going to be mentioned, Your Honor

**Mr. Savage:** And that's the purpose that Mr. Cooper went to cooperate in taking the polygraph examination. I think –

**(Tr. 827-28)**

**Ms. Wilson:** Was there anyone else present with you and the Defendant, Mr. Cooper

**The witness:** For the first three hours or so, no. Later on, Agent Little of the FBI did join me in the interview.

**(Tr. 834)**

**Mr. Savage:** He was consistent in all aspects of his interview regarding the armed robbery which he suffered on October 11, 1994?

**The witness:** He provided me information known in my report.

**Mr. Savage:** And of course at the end of the interview, we started getting into things that are not associated with this case, which were not related to your interview about his Florida dog-track winnings or losses, his Georgia lottery, and his playing the numbers, which you have told this jury was illegal in the City of Charleston, correct?

**The witness:** I disagree that that's irrelevant.

**Mr. Savage:** That's not what he's on trial for, is it?

**The Court:** Just ask him the question, Mr. Savage.

**Mr. Savage:** Is he charged with gambling in this case?

**The witness:** Can I explain my answer, Your Honor?

**(Tr. 856)**

Agent Espie testimony was indeed false, a bald face assumption. However, his testimony was most impressive towards the jury, especially, when he testified about Mr. Cooper's gambling which made a compelling impact on the jury's guilty verdict. However, the record is well-established and all the evidence supports Mr. Cooper's complaint that Agent Espie testified falsely. His credibility as a *witness* was improperly

19

before the trier of facts, the jury. And thus, Agent Espie did knowingly, willfully, fraudulently and deliberately perjury himself by making false declarations while under oath before the court jury all in violation of 18 USC §§§ 1001, 1621(2), and 1623(a)

## DEFENDANT YOUNGBLOOD

On February 19, 1996, Mr. Youngblood conspired with others to interfere with Mr. Cooper civil rights. Mr. Youngblood did knowingly, willfully, fraudulently and deliberately *used* the false and inconsistent statements of Mr. Rivers that he provided to Agent Little and other officers during countless debriefings November 10th, thru 15th, 1994, to prepare Mr. Cooper's PSR, while Mr. Youngblood made mentioned of Mr. Rivers' untruthfulness and inconsistencies in his statements during several debriefings with Agent Little and other officers **(PSR, ¶¶ 18 & 22).** Howbeit, Mr. Youngblood *still* failed to correct all the false information he collected and report upon. Moreover, Mr. Cooper received an added eight points illegal enhancements and an illegal restitution all of which were made by the determination of Mr. Youngblood, rather than submitted to a jury, and proven "beyond a reasonable doubt". On July 29, 1996, during Mr. Cooper's sentencing hearing, various factual objections were made to his PSR. Mr. Youngblood responded to Mr. Cooper's objections without *any* fact-findings, then, on August 2, 1996, ordered Mr. Cooper's disputed and unresolved PSR *sealed.* Through due diligence, Mr. Cooper's PSR was finally sealed and disclosed to him on January 25, 2000, by the *order* of Falcon B. Hawkins, District Judge. According to Mr. Cooper's PSR, Mr. Youngblood calculated his guideline range as follows:

** Two points added for the property of a financial institution was taken, pursuant to USSG § 2B3.1 (b) (1) (A) **(PSR, ¶ 37)**

This is contrary to **(PSR, ¶ 19)** (Mr. Rivers and *(unindicted)* Mr. Bryant then exited the van, taking the bag of money and got into Mr. Rivers wife's vehicle which they had previously parked and proceeded down Highway....)

    ** Two points added for a person was physically restrained to facilitate commission of the offense, pursuant to USSG § 2B3.1 (b) (4) (B) **(PSR, ¶ 38)**

This it contrary to **(PSR, ¶ 38)** (*(unindicted)* Mr. Bryant removed Mr. Williams' revolver and took him to the far side of the van out of sight of Mr. Rivers and Mr. Cooper. Clearly, *(unindicted)* Mr. Bryant committed this offense.)

    ** One point added for a firearm was taken, pursuant to USSG § 2B3.1 (b) (5) **(PSR, ¶ 39)**

This is contrary to **(PSR, ¶ 20)** (The service revolver that was taken from Mr. Williams was thrown into the Goose Creek reservoir by *(unindicted)* Mr. Bryant...). Clearly, *(unindicted)* Mr. Bryant committed this offense.

    ** One point added for the loss exceeded $10,000 however, was not more than $50,000 pursuant to USSG § 2B3.1 (b) (6) (B) **(PSR, ¶ 40)**

This is contrary to **(PSR, ¶ 20)** (Mr. Rivers then drove *(unindicted)* Mr. Bryant to the Econo Lodge in Summerville where they split the money...)

    ** Two points added for "*it is the determination of the U.S. Probation Officer that Mr. Cooper was an organizer and leader of his criminal activity*" **(PSR, ¶ 40)**

This is contrary to **PSR, ¶¶ 18-20)** Mr. Rivers portrayed his role as the organizer and leader for the October 11, 1994 ATM robbery as he explained how both he and (*unindicted*) Mr. Bryant schemed and planned to carry out the robbery.

    **Restitution**: Mr. Cooper was ordered to pay restitution for $43,677.50 at a rate of $700 monthly directly to: Pinkerton Security, pursuant to 18 USC §§ 3663-3664

and USSG § 5E1.1 (a) (1) Mr. Cooper restitution was determine based solely on

Mr. Youngblood determination: *("Diane Good of the Risk Management Depart-*
*ment of Pinkerton Security, Encino, California, indicates that total losses incurred*
*by Pinkerton as a result of the activities of the perpetrators of these offenses were*
*$40,180 and $47,175 for a total of $87,355 Carl Benit Cooper will be held*
*accountable for this amount for loss and restitution purposes, restitution to be*
*proportionately divided among co-defendants at the time of sentencing. Restitution*
*should be directed to Pinkerton Security, ....")* **(PSR, 25 and 99-100)**

This is contrary to both 18 USC § 3663-64 and USSG § 5E1. 1 (a) (1) despite the fact the

alleged restitution can not be supported with fact-findings. But more importantly, clearly,

Pinkerton Security *"is not"* the **[victim]** in this alleged offense nor does it fall within the

purview of the Victim and Witness Protection Act of 1982 (VWPA). And thus, Pinkerton

Security *"is not"* entitle to restitution. Mr. Youngblood (a neutral party), a public official

committed official misconduct because his of conspiracy.

**In furtherance** of defendant Hendricks, Little and Youngblood conspiracies, their did

knowingly, willfully, fraudulently and deliberately allow Mr. Cooper to serve an addition

5 years in federal prison for the use of a firearm (his (alleged) Count 4), which ran

consecutive with his illegal 6 and one half years of imprisonment without any evidence.

However, the record taking as a whole is clear Mr. Cooper did not have a firearm in his

possession during the October 11, 1994 offense. As noted in Attachment-B Affidavit of

defendant Little: ("Cooper was armed but his revolver was not on his person; it was

lying on top of the automated teller machine") **(Exhibit #3).** *Why?* Because: ("Mr.

Cooper had medical problems, which the company [Pinkerton], in agreement with him,

stated that he was only required to have his firearm in close proximity. He wasn't

required to wear it") **(Tr. 456).** However, the evidence does show that, the firearm used

in the October 11, 1994 offense was a 9 millimeter hand gun stolen by Mr. Rivers on

August 23, 1994 **(Tr. 299, 301, 352-53).** But more importantly, the conspiracy is still
ongoing and it has not been corrected.

In justifying money damages recoverable from the defendants in a Bivens Claims
under 42 USC 1983. Clearly, Mr. Cooper has ***stated a claim on which relief can be
granted,*** and he has also demonstrated **[HOW]:**

1. There was a meeting of the minds between two or more persons to accomplish a
common and unlawful plan against him

2. Mrs. Hendricks and Agent Little successfully accomplished their conspiracies by
conspiring directly and/or indirectly with one another and others to interfere with Mr.
Cooper civil rights

3. Agent Espie conspiracy compelled him to testify untruthfully at trial before the trial
jury while under oath

4. Mr. Youngblood conspiracy commanded him to use false and inconsistent
information (from a well-known lair and a thief **(Tr. 85)**) to prepare Mr. Cooper's PSR
for which none of the information in Mr. Cooper's PSR can be supported by any trial
transcripts

For *all* the reasons set forth herein as well as the supporting documents and adopted
herein. *[By a jury trial]* Mr. Cooper is seeking money damages for $100,000,000.00 from
the United States Department of Justice for whom the Defendants are employed.

## RELIEF SOUGHT:

Mr. Cooper Prays this Honorable Court should accept his **pro-se** Bivens Complaint

pursuant to 42 USC 1983 and grant him to proceed in this lawsuit but limit the damages

recoverable for wrong done him by the defendants. Surely, plainly, and clearly, Mr.

Cooper has suffered pain and is continuing to suffer, as a result of his *"prison sanction"*

*"loss of freedom and property" "loss of a second retirement career with the U.S. Postal*

*Service" "loss of disability income as a 50% Disabled American Veteran and other*

*entitlements" "a damaged reputation and the embarrassment of being stigmatized as a*

*convicted felon"* and that he be awarded costs. Mr. Cooper request that the American Bar

Association be advised of Mrs. Hendricks misconduct for violation of the Model Rules of

Professional Conduct. Again, Mr. Cooper Prays this Court should grant his Bivens

Complaint and any other relief this Court deems just and equitable

*I declare under penalty of perjury that the foregoing is true and correct.*

---
5-5-06
Date

Carl B. Co___

Mr. Carl Benit Cooper, **pro-se**
107 Little Joes Lane
Barco, North Carolina 27917-9526
(252) 453-4983

24