# EXHIBIT 1

FILED
NOV - 6 2002


REVISED DATE: 10/97

# FORM TO BE USED BY A STATE PRISONER IN FILING A COMPLAINT UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. SECTION 1983 OR BY A FEDERAL PRISONER IN FILING A BIVENS CLAIM.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

NO. _____ (leave this space blank)

CASE NUMBER  1:02CV02191
JUDGE: Unassigned
DECK TYPE: Pro se General Civil
DATE STAMP: 11/06/2002

CARL BENIT COOPER · R 91121-071
FMC, P.O. Box 1600, Butner, NC 27509-16

(enter full name of each plaintiff(s))

Inmate Number  91121-071

v.

JOHN ASHCROFT, U.S. ATTY. GEN.

BRUCIE HOWE HENDRICKS, ESQ., AUSA OF SOUTH CAROLINA

V.O. LITTLE, SPECIAL AGENT, FBI

(enter full name of each defendant(s))

*************************************************************************

I.  HAVE YOU BEGUN OTHER LAWSUITS IN FEDERAL COURT DEALING WITH THE SAME FACTS INVOLVED IN THIS ACTION?  YES ( )   NO ( )

If your answer is YES, describe the former lawsuit in the space provided below:

N/A

_____

_____


I.  DID YOU PRESENT THE FACTS RELATING TO YOUR COMPLAINT TO THE STATE INMATE GRIEVANCE PROCEDURE?  YES ( )   NO ( )

If your answer is YES:

1. What steps did you take?  N/A _____

_____

/

REVISED DATE: 10/97

2. What was the result? (Attach copies of grievances or other supporting documentation.)

N/A _____

_____


VERIFIED STATEMENT

I have been advised of the requirements regarding exhaustion of administrative remedies and now submit this verified statement.

(Please choose the box that applies to your action):

_____ There are no grievance procedures at the correctional facility at which I am being confined.

**XXXX** This cause of action arose at **Making false declaration before a Grand Jury; Malicious Prosecution, and Prosecutorial Misconduct**, and I am now being housed at **FMC Butner, North Carolina**. Therefore, I do not believe I have administrative remedies relating to this complaint at this time.

_____ I have exhausted by administrative remedies relating to this complaint and have attached copies of grievances demonstrating completions.


I.  PARTIES   In Item "A" below, place your name in the first blank and your present address in the second blank. Do the same for additional plaintiffs, if any. NOTE: ALL PLAINTIFFS LISTED IN THE CAPTION ON THE FIRST PAGE SHOULD BE LISTED IN THIS SECTION.

   A. Name of Plaintiff **Carl Benit Cooper**

   Name and Address of Present Confinement **Federal Medical Center (FMC Butner)**

   **Post Office Box 1600, Butner, North Carolina 27509-1600**

   In Item "B" below, place the full name of defendant in the first blank, his official position in the second blank, and his place of employment in the third blank. Use Item (C) through (F) for additional defendants. NOTE: ALL DEFENDANTS LISTED IN THE CAPTION ON THE FIRST PAGE SHOULD BE LISTED IN THIS SECTION.

   B. Defendant **John Ashcroft**

   Position **The United States Attorney General**

   Employed at **Office of United States Attorney General**

   Address **950 Pennsylvania Avenue, NW Washington, DC 20530**

REVISED DATE: 10/97

C. Defendant **Brucie Howe Hendricks**

  Position **Assistant U.S. Attorney**

  Employed at **Office of the United States Attorney**

  Address **170 Meeting Street, Suite 300, Charleston, SC 29402**

  Capacity in which being sued: Individual ( ) Official ( ) Both (**XX**)

D. Defendant **V.O. Little**

  Position **Special Agent, Federal Bureau of Investigation**

  Employed at **Office of VCTF/FBI**

  Address **170 Meeting Street, P.O. Box 921, Charleston, SC 29402**

  Capacity in which being sued: Individual ( ) Official ( ) Both (**XX**)

E. Defendant _____

  Position _____

  Employed at _____

  Address _____

  Capacity in which being sued: Individual ( ) Official ( ) Both ( )

F. Defendant _____

  Position _____

  Employed at _____

  Address _____

  Capacity in which being sued: Individual ( ) Official ( ) Both ( )

V. STATEMENT OF CLAIM

State here as briefly as possible the FACTS of your case. Describe how each defendant is involved. Include also the names of the other persons involved, dates and places. DO NOT GIVE ANY LEGAL CITATIONS OR ANY LEGAL ARGUMENTS OR CITE ANY STATUTES. If you wish to allege a number of related claims, number and set forth each claim in a separate paragraph. Use as much space as you need. Attach extra sheets if necessary.

  (See, Attached)

## IV. **STATEMENT OF CLAIM**

Plaintiff (Hereinafter "**Cooper**") is seeking money damages for $50,000,000 (Fifty Million Dollars) from the United States Department of Justice, et al., for conspiring to violate his civil rights, in violation of 18 U.S.C. §§ 241, and 242; for presenting false statements before a quorum, and for making false declarations under oath before a Grand Jury, in violation of 18 U.S.C. § 1001, and § 1623(a); by maliciously superseding the Indictment against him [while actually in possession of **Brady** material--but failed to disclosed] which subsequently led to the government's malicious prosecution and prosecutorial misconduct…which ultimately led to both his *illegal* conviction on September 22, 1995 and sentence on July 29, 1996, for a total term of 138 (one hundred thirty-eight) months of imprisonment; Five (5) years supervised release; and restitution for $43,677.50 to be paid directly to: Pinkerton Security.

First and foremost, **Cooper** understands his case may be subject to one or more statutes of limitations and/or time deadlines. But given the mere fact that his Grand Jury presentation was sealed until April 7, 1997; his PSI was sealed until January 25, 2001. And that it was through due diligence these documents were ultimately unsealed and disclosed to him—estoppel. Thus, he should not be time barred from filing this "Bivens Action". Because the conspiracy is still ongoing. Second, he wishes to make very clear that he '*is not*' challenging his criminal conviction or sentence in this "Bivens Action". Although, it may appear this way, however, this '*is not*' his intention…but rather, to demonstrate to this court by simply litigating the best way possible to briefly state his statement of claim. **Specifically:**

On January 11, 1995, a federal Grand Jury returned a four (4) count Indictment charging **Cooper** and Wilfred Rivers (("Rivers", **Cooper's** alleged co-conspirator) with conspiracy to commit armed bank robbery (18 U.S.C. § 317) on October 27, 1994; bank robbery (18 U.S.C. §

1

2113(b) and § 2) on September 24, 1994; armed bank robbery (18 U.S.C. § 2113(a)(d) and § 2) on October 11, 1994; **and** use of a firearm during a crime of violence (18 U.S.C. § 924(c) and § 2) on October 11, 1994. **In particular:**

(a) **Count 2**: Alleged that on September 24, 1994, **Cooper** committed a bank theft from an Automated Teller Machine (ATM) belonging to NationsBank, taking and carrying away approximately $40,000 **(G.J. p.5)**, in violation of 18 U.S.C. § 2113(b) and § 2. **(PSI, p.1, para. 2)**
WHEREAS, there is *absolutely* no evidence linking **Cooper** to the September 24, 1994, ATM theft of $40,000; **and**

(b) **Counts 1, 3, and 4:** Alleged that on or about July 6, 1994, **Cooper** committed a bank theft from an ATM belonging to NationsBank for $9,000 **(G.J. p.4)**, in violation of 18 U.S.C. § 2113(b); On October 11, 1994, he conspired to commit armed [ATM] bank robbery, in violation of 18 U.S.C. § 2113(a)(d); **and** using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c); all in violation of 18 U.S.C. § 371 **(PSI, pp. 1-2, para. 1, 3, and 4)**.
WHEREAS, there is *absolutely* no evidence linking **Cooper** to the July 6, 1994, ATM theft of $9,000 **(Tr. 611-13)**…Moreover, the record as a whole clearly reflects that on October 11, 1994, at a NationsBank's ATM located at 1020 Anna Knapp Boulevard, Mt. Pleasant, South Carolina, at approximately 9:38p.m. while **Cooper** was at work; working for Pinkerton Security, who…had a contract with NationsBank to provide timely maintenance and repair service when NationsBank's ATM malfunctioned…which was **Cooper's** principal responsibility as a Pinkerton ATM Responder, in which **Cooper** was both hired and trained for….And, for which he was performing on the evening or October 11, 1994, at approximately 9:38p.m. when he was unexpectedly robbed at gun point by two (2) masked gun men; while his Pinkerton partner stood guard nearby with his hands in his pockets. **(PSI, p.7, para. 19)**. **Cooper** was armed with a gun, his service revolver, which he had laid up atop the ATM machine once he started to open the machine to service it…and it remained atop of the ATM machine during the entire robbery **(G.J. p. 29)**.

**NOW**, at the heart of **Cooper's** "Bivens Claim" is the assertion that but for Defendant Brucie Howe Hendricks, prosecutor, Assistant U.S. Attorney of South Carolina, Charleston Division, who…maliciously appeared before a quorum on January 11, 1995, which was confirmed by the foreman of the Grand Jury, did knowingly and fraudulently present false statements before a quorum when [she] stated the "Overt Acts" in **Cooper's** (alleged) criminal offense **(G.J. pp. 3-7, para 1-21)**; **and** Defendant V.O. Little, VCTF/FBI, Charleston, South Carolina, who…being

2

duly sworn by the foreman of the Grand Jury, to testify truthfully, make false declaration under oath before a Grand Jury. Clearly, both defendants conspired to violate **Cooper's** civil rights (18 U.S.C. § 241, and § 242); the conspiracy was enhanced when both defendants opted to violate The Model Rules of Professional Conduct, by presenting false statements to a quorum; by making false declaration under oath before a Grand Jury (18 U.S.C. § 1001, and § 1623(a)) which was "indeed" unethical under the Ethical Standards and resulted in a "miscarriage of justice", U.S. Const. Amend. 5, 6, and 14.

On April 7, 1997, federal Judge Falcon B. Hawkins, <u>ORDERED</u> **Cooper's** Grand Jury presentations, dated, January 11, 1995, and March 14, 1995, to be unsealed and disseminated to him. After obtaining possession of these documents, it was determined at that time by **Cooper** that Defendants Hendricks, and Little, had conspired to violate his civil rights; had presented false statements before a quorum, and made false declaration under oath before a Grand Jury. However, **Cooper's** Presentence Investigation **(PSI)** Report was then sealed, and did so remain sealed until January 25, 2001. Nevertheless, according to **Cooper's** Grand Jury Presentation, dated, January 11, 1995, the evidence establish and supports **Cooper's** claim that, Defendant V.O. Little, witness, being duly sworn by the foreman of the Grand Jury [to testify truthfully…did knowingly and fraudulently present false statements of Rivers' who…admitted he lied, many times, during several debriefings with FBI agent **(PSI p. 9, para 22)**, nevertheless, those false statements were used to obtain an Indictment on **Cooper**], ( G.J. p. 12) Defendant Little, testified as follows <u>specifically</u>:

> 1. **THAT**, "Rivers had provided information that **Cooper** has stolen $7,000 from an ATM machine…" **[during the July 4th weekend on a Saturday morning at approximately 6:a.m., PSI p. 4]**. That, he [Little]

3

was able to confirm…with NationsBank records reflect so…**(G.J. pp. 19-20)**

**WHEREAS**, during trial, it was demonstrated and proven by NationsBank that there were multiple losses at this one particular ATM machine between July 1st and July 7th. On July 6th, $7,200 was short. The next day [being July 7th] it was counted again, and they came up with a different amount of $9,125. **(Tr. 611-13)**. Moreover, Little had proof that the alarm [at this particular ATM machine] was deactivated on July 2nd at 9:26a.m. in the morning [not at 6:00a.m.] and it did so remain off for over eight hours **(Tr. 573)**.

**2. THAT**, on several occasions **Cooper** showed Rivers large sums of money ([reference to the alleged $9,125 stolen on July 2nd], most notably twenty-dollar bills [$20's] and five-dollar bills [$5's] strapped together as if they were crisp new bills. At his [**Cooper**] residence…**(G.J. p. 20)**. [Supposedly] sometime between July and August of 1994 **Cooper** showed Rivers a fire-restraint box underneath his house, containing approximately $30,000 in currency **(G.J. p.4, para 4)**.

**WHEREAS**, during trial, Rivers testified to seeing a bunch of cash in 20-dollar denominations. All of them was in 20's, 20 dollar bills **(Tr. 183)**. Moreover, this was never proven.

**3. THAT**, on September the 21st…Rivers advised it [the robbery] did not occur because he got scared ,…a third Pinkerton Security guard who was hired off—not an ATM respondent but just as a security guard---**(G.J. pp. 21-22)**.

4

**WHEREAS**, during trial, Rivers testified that he aborted the robbery because he got stuck because there was a lot of vines and stuff in the wooded area...**(Tr. 255-57)**.

**4. THAT**, Rivers provided us [Little] with the information that he had in fact, along with **Cooper**, burglarized the ATM machine....And also, alarm records indicated that the alarm was turned off at approximately 12:00a.m. on that morning, the 24th [of September 1994]. And Rivers is seen standing out on the surveillance video tape at approximately the same time. **(G.J. p. 24)**.

**WHEREAS**, the evidence demonstrated the alarm records actually indicated the alarm was accessed at 007, which was seven minutes after midnight....And, it was set at 3:16 in the morning. That's 3 a.m., and it was set from that location **(Tr. 576)**.

**5. THAT**, <u>When Questioned</u>: whether or not on September the 24th, 1994, Rivers concealed at his residence a bag containing the $40,000 stolen by **Cooper** and Rivers from the ATM NationsBank,..? Little, answered: Yes. **(G.J. pp. 24-25)**.

**WHEREAS**, during trial, Rivers testified that, he never counted out the money that was taken that night. **Cooper** told him it was $30,000 **(Tr. 271)**. Rivers also testified that, he took $18,000 home with him **(Tr. 281)**.

**6. THAT**, [with regards to the alleged stolen $40,000, Little stated—yes] **(G.J. p.2, para 11)**. The week after the robbery—excuse me, the week after the burglary that occurred in September,...the week of October the 3rd, [actually the 4th] **Cooper** purchased a satellite system..., at which time **Cooper** paid for the satellite with twenty crisp twenty-dollar bills, approximately $2,000,... **THAT**, yes, they [Mr. Veno] remembered

5

talking with Cooper about the bills being so crisp and new, and **Cooper** advised them that he had obtained the money from his brother in Georgia **(G.J. p. 26)**.

**WHEREAS, Cooper** has "<u>never</u>" had a brother to live in Georgia. This is contrary to Mr. William Roland Veno's (the owner of the satellite company) testimony. During trial, Mr. Veno testified: yeah, lots of 20's. It [the money] was basically—if you had gone to the bank and got cash out, it was fairly new money **(Tr. 861)**. Moreover, **Cooper** withdrew cash from his bank account for $1,500 on October 4, 1994 **(Tr. 866-67)** to pay for his satellite purchased on October 4, 1994 **(Tr. 860, 1163)**. Again, Mr. Veno did not say anything about sticky $20 bills **(Tr. 1170-71)**.

**7. THAT**, yes. Rivers also provided a statement that he and **Cooper** had planned and staged this robbery with Dwayne Bryant who... is identified as being the second masked man that accompanied Rivers on the night of October the 11th to the robbery **(G.J. p. 26)**.

**WHEREAS**, according to **Cooper's** PSI, **Cooper** had '<u>never</u>" met Bryant **(PSI pp. 6-7, para 18)** which is true.

**8. THAT**, <u>When Questioned</u>: All of this is based on what Rivers says? Little, answered—no. We've been able to go back...to NationsBank and they're saying, 'hey, the machine was turned off...at approximately 12:00 to 12:07'. And based upon that,...**(G.J. p. 35)**.

**WHEREAS**, evidence demonstrated the alarm records actually indicated the alarm was accessed at 007, which was seven minutes after midnight....And, it was set at 3:16 in the morning. That's 3a.m., and it was set from that location **(Tr. 576), (PSI, p. 4, para 13)**.

**9. THAT**, <u>When Questioned</u>: If they found money at **Cooper's** house? Little answered—'we never found money at **Cooper's** house'...but he added almost $20,000 worth of revisions to his house. We've interviewed

6

construction people who indicated that they were paid cash money. Some of them indicated that it was crisp new twenty-dollar bills **(G.J. pp. 36-37)**

**WHEREAS, Cooper** was "<u>never</u>" served a search warrant [nor] was his house "<u>ever</u>" searched by defendant Little or anyone else....The almost $20,000 for revisions to make major additions and improvements to his home. During trial, the government (allegedly) proved that $13,500 was the cost for **Cooper's** home improvements. However, less $4,500 of the $13,500 which was for a chain-link fence paid for, through the Bankruptcy Trustee...; there were witnesses/construction who testified about how they were paid, they were paid in checks and in cash. No witness believed the cash payments were extraordinary or outside the normal course of business. No witness testified that he/.she knew or believed the money came from illegal sources. **(Tr. 538, 543, 546, 1050-52)**.

Nonetheless, defendant Little, repeatedly implied to the Grand Jury that cash payments represented nefarious activities with regards to NationsBank, were used by **Cooper** to make major additions and improvements to his home, all in violation of 18 U.S.C. § 1001, and § 1623(a) false statements made under oath, in a proceeding before a Grand Jury of the United States knowingly is to perjury. Defendant Little's testimony was "indeed" false—a bald face assumption.

**Then**, on March 14, 1995, defendants Hendricks, and Little, [further] enhanced their conspiracy in violating **Cooper's** civil rights (18 U.S.C. §§ 241, and 242), when they maliciously superseded the Indictment on him adding three (3) counts of criminal bankruptcy fraud (18 U.S.C. § 152 and § 2) on May 19, 1994. Fraudulent concealing at the time, [exculpatory] evidence pertaining to **Cooper's** bankruptcy [**Cooper's** Chapter 13 Bankruptcy Plan, which was confirmed on July 28, 1994, by the U.S. Bankruptcy Court for the District of South Carolina]

7

known as case number: 94-72416. But rather, they knowingly and fraudulently presented evidence of an event that pre-dated the alleged bank offenses counts 1-4, and superseded the Indictment to include a wholly separate and distinct offense, chilling **Cooper's** ability to present witnesses in possession of exculpatory factual evidence; denying him due process of law. U.S. Const. Amend. 5, 6, and 14.

On January 25, 2001, federal Judge Falcon B. Hawkins, finally, Ordered **Cooper's** PSI to be unsealed and disclosed to him since imposing sentencing on July 29, 1996 and sealing his PSI on August 1, 1996. After **Cooper** had obtained possession of his PSI, it was clear, according to his PSI, defendants Hendricks, and Little, had "indeed" maliciously filed a superseding Indictment against him which was identical to the original Indictment counts 1-4 alleging conspiracy to commit bank robbery on October 11, 1994,…but was returned adding three (3) counts of criminal bankruptcy fraud, in violation of 18 U.S.C. § 152 and § 2, alleging *misrepresentation* of financial information to a federal Bankruptcy Trustee on May 19, 1994, **specifically**:

(a) **Count 5**: alleged that the Defendant, Carl Benit Cooper, filed a Chapter 13 bankruptcy Petition under Title 11, U.S.C. on May 19, 1994, known as case number 94-72416, in the U.S. Bankruptcy Court for the District of South Carolina…And, that Cooper did knowingly and fraudulently concealed from R. Geoffrey Levy, the Chapter 13 Bankruptcy Trustee appointed on May 19, 1994, property belonging to the Trustee Estate;

(b) **Count 6**: alleged that on May 19, 1994, the Defendant, Carl Benit Cooper, did knowingly and fraudulently did make a material false statement under 28 U.S.C. § 1746 in the bankruptcy proceeding by undervaluing stated assets; **and**

(c) **Count 7**: alleged that on May 19, 1994, the Defendant, Carl Benit Cooper, did knowingly and fraudulently make a false material statement under 28 U.S.C. § 1746 by listing in the bankruptcy application no cash on hand when, in fact, he had $166,000 in cash and personal property.

**PSI, p.2, para 5-7)**

On September 11, 1995, before trial, defendant Hendricks, motioned the court to dismiss counts 6, and 7 of the Superseding Indictment on **Cooper** without prejudice leaving **Count 5** to survive. Then finally, on July 28, 1999, **Cooper's Count 5**, bankruptcy fraud, was disposed of by federal Bankruptcy Judge William Thurmond Bishop, for the District of South Carolina, as *insufficient* "**null**" and "**void**" when he issued an ORDER of dischargeability on **Cooper's** Chapter 13 Bankruptcy Plan, known as case number: 94-72416.

On August 21, 2002, **Cooper** filed with the Fourth Circuit, his second Motion for Relief From Judgment/Modification Of Judgment pursuant to Federal Rules Civil Procedure, Rule 60(b), to "**VOID JUDGMENT**" from his illegal **Count 5**, bankruptcy conviction. This action resulted from both the January 25, 2001, unsealed and disclosed of his PSI and the July 28, 1999, Chapter 13 Bankruptcy Discharge Order issued by the U.S. Bankruptcy Judge for the District of South Carolina. That action is still pending.

On September 4, 2002, **Cooper** wrote to the South Carolina Bar with a complaint regards to defendant Hendricks' misconduct. On September 17, 2002, the Client Assistance Program of the South Carolina Bar responded to **Cooper's** letter/complaint advising him that, his letter is being passed on to the Commission on Lawyer Conduct—the Branch of the South Carolina Supreme Court that has the authority to investigate and recommend sanctions regarding misconduct by attorneys.

For all the reasons set forth herein, as well as the supporting documents. **Cooper** is seeking money damages for $50,000,000 from the United States Department of Justice, et al. The U.S. Department of Justice is headed by the U.S. Attorney General, defendant, John Ashcroft, who is

9

responsible for directing all the affairs and activities of the department. He supervised these activities and also directs the U.S. Attorneys in the judicial district around the country. Here, in this case, clearly, defendant Ashcroft failed to supervise and direct the South Carolina U.S. Attorney reference **Cooper's** civil rights violation. U.S. Const. Amend. 5, 6, and 14.

Defendant Brucie Howe Hendricks, prosecutor, for failing to comply with the ethical standards of the American Bar Association (ABA) Model Rules of Professional Conduct, adopted in 1983. Clearly, defendant Hendricks is guilty of violating such ethical standards as demonstrated which resulted in her misconduct; and

Defendant V.O. Little, VCTF/FBI, for filing a false complaint; making a false arrest; failing to conduct a fair investigation in **Cooper's** (alleged) criminal case; for gathering and submitting false reports to both the U.S. Attorney General's Office in Washington, D.C., and to the U.S. Attorneys' Office for the District of South Carolina, with regards to his (alleged) criminal case. Moreover, for making false declaration under oath before a Grand Jury. Clearly, defendant Little, is guilty of misconduct for failing to adhere to the American Bar Association (ABA) Model Rules of Professional Conduct.

Thus, such misconduct by all defendants "absolutely" stifle **Cooper's** inability to put up a complete defense as a result of their unethical conduct, which resulted in both a miscarriage of justice, and a violation of **Cooper's** constitutional rights. U.S. Const. Amend. 5, 6, and 14.

## V.   **RELIEF SOUGHT BY PRISONER**

**Cooper** prays this Honorable Court finds his "Bivens Claim" acceptable; Grant him the money damages requested based upon the reasons set forth herein; expunge his (alleged)

criminal history reference: <u>United States v. Cooper</u>, Criminal No: 2:95-206; and take the proper disciplinary action against defendant Little, foremost, for making false declarations under oath before a Grand Jury; defendant Hendricks, for presenting false statements before a quorum; prosecutorial misconduct. Both defendant Hendricks , and Little, should have adhered to the ABA Model Rules of Professional Conduct Standards of Ethics.

REVISED DATE: 10/97

(See, Attached)

_____

(See, Attached)

V. RELIEF SOUGHT BY PRISONER

State briefly exactly what you want the Court to do for you. MAKE NO LEGAL ARGUMENTS. DO NOT CITE CASES OR STATUTES.

(See, Attached)

REVISED DATE: 10/97

_____(See, Attached)_____

_____

_____

Signed this __4__ day of __OCTOBER__ 2002

_____*Carl B. Cooper*_____
Signature of Plaintiff

_____
Signature of other Plaintiffs
(if necessary)

I declare under penalty of perjury that the foregoing is true and correct.

__10/4/02__    _____*Carl B. Cooper*_____
Date                Signature of Plaintiff

_____
Signature of other Plaintiffs
(if necessary)